52 F.3d 1122
 311 U.S.App.D.C. 277
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
William H. PIKE, Petitioner,
v.
UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 94-1621.
 United States Court of Appeals, District of Columbia Circuit.
 April 4, 1995.
 
 Before: WILLIAMS, HENDERSON and TATEL, Circuit Judges
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record of the United States Securities and Exchange Commission and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and has determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the petition for review be denied.
 
 
 3
 The clerk is directed to withhold issuance of the mandate until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Petitioner William H. Pike seeks review of an order of the Securities and Exchange Commission (SEC) denying his motion to vacate a consent order that found he had violated the reporting requirements of section 34(a) of the Investment Company Act (Act) and SEC Rule 31a-1, barred him from investment employment for three months and directed him to refrain from future violations. For the following reasons, the petition is denied.
 
 
 5
 From 1981 until mid-1988 Pike, an employee of Fidelity Management & Research Company, managed the firm's "High Income Fund," an open-ended, registered management investment fund dealing primarily in high-yield, fixed-income corporate securities. In 1989, SEC staff members began investigating transactions Pike had conducted with Drexel Burnham Lambert Inc. (Drexel), which was the object of an extensive SEC investigation. Sometime in 1991 Pike was informed that the SEC planned to initiate administrative proceedings against him. With advice of counsel, Pike made an offer of settlement which was incorporated in a consent order entered March 5, 1992. That order found that Pike had on three occasions purchased bonds from Drexel on the oral condition that he resell them to Drexel on a specific date for a set price but that he had recorded each purchase and resale as an unrelated transaction without disclosing the resale contingency. Based on these facts, the order concluded that Pike had violated the recording requirements of section 34(b) of the Act and of SEC Rule 31a-1, promulgated pursuant to Section 31(a) of the Act. Accordingly, the order directed that Pike (1) "permanently cease and desist from committing or causing any violation, and from committing or causing any future violation, of section 34(b) of the Investment Company Act" and suspended him for three months from "association with any broker, dealer, investment adviser, investment company, or municipal securities dealer." Appendix (App.) 93-94.
 
 
 6
 After the three-month suspension ended, Pike encountered difficulty obtaining employment as an investment fund manager and on December 16, 1993, he filed with the SEC a petition "to Vacate the Findings and Order Against Him," asserting that the consent order "was based on a violation that [he] did not commit, and that has visited on him consequences whose severity he could not have anticipated." App. 99. On July 20, 1994, the SEC denied Pike's petition, concluding that he had violated section 34(b) of the Act, that his difficulty obtaining employment was "simply a natural consequence of the action taken against him" and that he had "forfeited the opportunity to litigate the charges against him." App. 147. On petition for review of that denial Pike concedes he is bound by the facts as recited in the consent order but contends those facts do not make out a securities law violation or, if they do, the consent order should nevertheless be vacated because its three-month suspension is in reality a permanent one. We find neither argument persuasive. Before a consent order will be disturbed, the party seeking modification or dissolution must show not simply that "it is no longer convenient to live with the terms of the decree" but that "a significant change in circumstances warrants revision of the decree." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383 (1992); see also id. at 385 (remarking that developments anticipated at time decree was entered do not ordinarily constitute cause to disturb decree). Pike has failed to make such a showing here.
 
 Section 34(b) provides:
 
 7
 It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to this subchapter or the keeping of which is required pursuant to section 80a-30(a) of this title. It shall be unlawful for any person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading.
 
 
 8
 15 U.S.C. Sec. 80a-33(b). Further, Rule 31a-1 specifically requires that
 
 
 9
 [e]very registered investment company shall maintain and keep current the following books, accounts, and other documents:
 
 
 10
 (7) ... a record of any contractual commitments to purchase, sell, receive or deliver securities or other property....
 
 
 11
 17 C.F.R. 270.31a-1(b)(7). Given the uncontested facts, the SEC reasonably concluded that Pike's failure to disclose his agreements to resell the bonds to Drexel constituted a "materially misleading" omission, in violation of section 34(a), and a breach of Pike's duty under Rule 31a-1 to record "contractual commitments to ... sell ... securities." Pike asserts there could be no section 34(b) violation because his omission was not "materially misleading." We disagree. Generally, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important." SEC v. Steadman, 967 F.2d 636, 643 (D.C.Cir.1992) (quoting TSC Indus. v. Northway, Inc., 426 U.S. 438, 449 (1976)). We believe it substantially likely that a reasonable investor, or at least investment company management,[1] would deem it significant that Pike agreed to sell particular high-yield investments on a date certain and for a predetermined price, thereby limiting their income and their growth potential. We also reject Pike's contention that he did not violate Rule 31a-1 because the oral agreements to resell the bonds were fell within the Massachusetts statute of frauds and were therefore not legally enforceable. Rule 31a-1 does not require a legally enforceable obligation but only a "contractual commitment." Even contracts that fall within a statute of frauds create legal obligations; they are not void or even voidable but only unenforceable in most circumstances. See Richard A. Lord, 1 Williston on Contracts p 1.21 (4th ed. 1990) (noting also that Restatement (Second) calls otherwise valid agreements falling within statute of frauds "unenforceable contracts").
 
 
 12
 Pike also asserts that, even if he violated the cited provisions, the consent order should be vacated because it has the inequitable practical effect of erecting a permanent bar to his employment rather than the three month suspension to which he agreed. Specifically, Pike contends that no investment fund is willing to hire him as long as the consent order remains in effect, especially in light of the SEC requirement that investment advisors "disclose to any client or prospective client all material facts with respect to ... [a] legal or disciplinary event that is material to an evaluation of the adviser's integrity or ability to meet contractual commitments to clients." 7 C.F.R. Sec. 275.206(4)-4(a)(2). While we might be somewhat troubled if an agency's own rule transformed a consensual temporary suspension into a permanent one, we are not convinced that happened here. On the record before us, Pike appears to have sought employment only as an investment fund manager, without even considering other positions within the industry. In addition, although Pike purports to have submitted more than forty applications, he cites only two rejection letters and one affidavit to support his claim and only the affidavit characterizes his disciplinary record as an unequivocal disqualification.[2] In sum, Pike has not demonstrated that the decree has had significant unanticipated consequences that render its continued application inequitable. See Rufo, supra.
 
 
 
 [1]
 The order specifically noted that Pike's omissions deprived his employer of information necessary to ensure its compliance with the statutory prohibition against deviating from established investment policies without shareholder approval. See 15 U.S.C. Sec. 80a-13(a)(3)
 
 
 [2]
 Although the two rejection letters note that Pike's disciplinary record may be a problem, each identifies lack of employment openings as the specific reason for not hiring him